197 So. 1

### SHERRILL et al. v. ALABAMA APPLIANCE CO., Inc.

6 Div. 613.

Supreme Court of Alabama.

May 9, 1940.

Rehearing Denied June 27, 1940.

H. H. Kinney and Griffith & Entrekin, all of Cullman, for appellants.

St. John & St. John, of Cullman, for appellee.

FOSTER, Justice.

This is a bill in equity by appellee seeking an injunction against appellants in the nature of specific performance of a contract made by appellant Frank T. Sherrill, individually, and by the Gem Dandy Manufacturing Company, Inc., acting through said Frank T. Sherrill, its president and principal stockholder, on the one hand and appellee on the other.

The questions raised relate to the validity of the contract, and the nature of the remedy sought.

The contract is in writing and recites the payment of $1,100 by appellee to the other party, receipt of which is acknowledged. The other party is referred to as "Gem Dandy," embracing both Sherrill and the corporation. We will do likewise, It recites that Gem Dandy will seek a patent for a churner, and grants to appellee the exclusive right to sell and distribute them throughout the United States and all foreign countries for the full term for which letters patent may be granted, and if none are granted, for seventeen years. Gem Dandy thereby agrees to manufacture and sell to appellee, who agrees to buy from Gem Dandy, "such churners for which Alabama (meaning appellee) can find sale."

The first question argued by appellant is whether the contract is void for an absence of mutuality, in that, appellee is not bound to sell any certain number, nor an amount of them which is controlled by any standard other than his will or discretion.

We have many cases which hold that when the obligation of an executory contract on the part of one of the parties fixes no definite obligation, and it is not enforceable against him and has no other consideration, it is not enforceable by him except to the extent that it has become definite and certain during its existence. Miller v. Thomason, 229 Ala. 267, 156 So. 773; Cosby-Hodges Milling Co. v. Riley, 227 Ala. 347, 149 So. 612; 5 Alabama Digest 21, Contracts, ☜ 10(4); Bentley-Beale, Inc., v. Wesson Oil & Snowdrift Sales Co., 231 Ala. 562, 165 So. 830; Jones v. Lanier, 198 Ala. 363, 73 So. 535. But in Alabama Mills v. Smith, 237 Ala. 296, 186 So. 699, we referred to a principle on which a person can for a valuable consideration purchase a contract by which an option right is given, binding on the seller, but for certain purposes, at the

will and option of the buyer. This principle has application in many aspects. Davis v. Robert, 89 Ala. 402, 8 So. 114, 18 Am.St.Rep. 126; Ross v. Parks, 93 Ala. 153, 8 So. 368, 11 L.R.A. 148, 30 Am. St.Rep. 47; Fuller v. Totten, 222 Ala. 174, 131 So. 435; 17 Corpus Juris Secundum, Contracts, § 100, p. 450; 13 Corpus Juris 336.

Mutuality of obligation may be necessary when there is no other consideration than their respective promises, but if there is other consideration, there need not be such mutuality. 12 Amer.Jur. 509, et seq., section 13; Evans v. Cincinnati, S. & M. Ry. Co., 78 Ala. 341, 345.

The recital of a valuable consideration in the contract is conclusive of the nature of the contract and its effect on that account. Ross v. Parks, supra; Bethea v. McCullough, 195 Ala. 480, 70 So. 680.

We do not wish to imply that the contract here in question imposes no substantial obligation duly enforceable against this appellee. It imposes a duty to buy such churners as he can find a sale for. This imposes on him a duty to use reasonable skill and diligence in finding a sale. Such a duty is implied in every obligation made by contract. It inheres in, and forms a part of, all dealings between men. A breach of it imposes a liability for which sometimes an action in tort or assumpsit (one or either) is available. Mobile Life Ins. Co. v. Randall, 74 Ala. 170, 176–178; Bentley-Beale, Inc., v. Wesson Oil & Snowdrift Sales Co., supra.

The contract here in question is not dependent upon the will or whim of appellee, but upon his ability, by the use of the word can, in connection with his sale of the churners. This binds him in law to use reasonable skill and diligence to sell them. If he does not, he thereby breaches his duty. A contract to use reasonable skill and diligence to sell the churners imposes a binding obligation on the person thus engaged. The contract here in question is not, in that view of it, wanting in mutuality.

Is the contract against public policy or in restraint of trade? There is no similarity here to a situation where one agrees not to engage in a certain line of business as discussed in the cases cited by appellant. Tuscaloosa Ice Co. v. Williams, 127 Ala. 110, 28 So. 669, 50 L.R.A.,N.S., 175, 85 Am.St.Rep. 125; American Laundry Co. v. E. & W. D. C. Co., 199 Ala. 154, 74 So. 58; Pearson v. Duncan & Son, 198 Ala. 25, 73 So. 406, 3 A.L.R. 242; Fullington v. Kyle Lumber Co., 139 Ala. 242, 35 So. 852.

But whether there is any public policy on which it infringes in that it creates a trust in violation of state or federal law is one which should be treated from a different angle. Appellant did not agree not to engage in a competitive business, but agreed that he would sell his output exclusively to appellee. When a manufacturer makes such a contract it does not necessarily create a monopoly, and is not always violative of the law. 41 Corpus Juris 143, § 128; 19 R.C.L. 139, section 105. Though it may be so, or it may violate state or federal anti-trust acts, dependent upon whether its purpose and effect are in restraint of trade or tend to create a monopoly.

But a patented article rests on a different principle. The very purpose of a patent is to give the patentee a monopoly as a reward for his genius in creating something new. This exclusive right is subject to his disposal either in whole or part to another who thereby becomes an assignee or a licensee, as the contract may disclose. The license may be to make, use or sell the patented invention. A grant to do one or all of such privileges is a right which the patentee has. It may continue throughout the term of the patent, but not beyond. The grantee or licensee may have the same exclusive rights which the patentee possesses if such is the nature of their contract. There is no territorial limitation within the United States either upon the rights of the patentee or of his licensee within the terms of his license. We are not concerned with foreign countries in this respect. Whether such an exclusive grant would be effective in a foreign country is not material to us, nor does it affect the contract here in question so far as we have jurisdiction over it.

The foregoing principles are well understood as a part of the patent laws of this country, and they are discussed in 48 Corpus Juris 236 to 270; 20 R.C.L. 1184 to 1188; Alabama Mach. & Supply Co. v. Boyd, 222 Ala. 640, 133 So. 683; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; General

Talking Pictures Corp. v. Western Electrict Co., 304 U.S. 175, 546, 58 S.Ct. 849, 82 L.Ed. 1273.

The bill alleges that one of the appellants, who granted the license, did invent and design the churner and has made application for a patent. It does not allege that the patent has been granted or denied. But it does allege that the other appellants, in conspiracy with the said inventor who granted the right to appellee, propose to manufacture and sell said improved churners to purchasers other than appellee.

Until the application for a patent has been denied, the inventor may sell or assign his inchoate rights or license their exclusive use or sale effective when the patent is granted to the same extent that this may be done after it is granted. 48 Corpus Juris 244, section 375.

The contract also provides that if no letters patent shall be issued covering the churner, the contract is to extend for a period of seventeen years. We will not deal with that contingency, since there is no allegation in that respect in the bill, and no demurrer is addressed to the failure to allege that the application for a patent has not been denied.

The usual form of relief by a licensee against the licensor from interfering with the exclusive rights granted by the license in the absence of an adequate remedy at law is by injunction. 48 Corpus Juris 284, section 470.

In a court of law for the breach of such a contract as that here involved, there would be no way to fix and measure the amount of damages subject to recovery. There is no way to ascertain the number of churners which appellee could sell, were he denied the exclusive right of selling them. Beck v. West & Co., 87 Ala. 213, 6 So. 70; Southern R. Co. v. Coleman, 153 Ala. 266, 44 So. 837; St. Louis & S. F. R. Co. v. Lilly, 1 Ala.App. 320, 323, 55 So. 937; Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 309, 113 So. 74; Byrne Mill Co. v. Robertson, 149 Ala. 273, 42 So. 1008; Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496.

It is apparent from the foregoing discussion that, in our opinion, the bill is not subject to any ground of demurrer which is urged by appellants on this appeal.

The decree of the trial court overruling such demurrer is accordingly affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.